IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Action No. 19-cv-01062-PAB

KENNETH D. MACKEY,

    Applicant,

v.

MATTHEW HANSON and
THE ATTORNEY GENERAL OF THE STATE OF COLORADO,

    Respondents.

---

**ORDER ON APPLICATION FOR WRIT OF HABEAS CORPUS**

---

Applicant Kenneth D. Mackey is a prisoner in the custody of the Colorado Department of Corrections. Mr. Mackey has filed *pro se* an Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254, Docket No. 1, challenging the validity of his conviction in Arapahoe County District Court, Case Number 2013CR2631. On July 31, 2019, Respondents filed an Answer, Docket No. 24, and on September 10, 2019, Mr. Mackey filed a Reply, Docket No. 27.

After reviewing the record, including the Application, the Answer, the Reply, and the state court record, the Court concludes Mr. Mackey is not entitled to relief on his remaining claims.

**I. BACKGROUND**

Mr. Mackey was convicted by a jury of first degree murder after deliberation, felony murder, attempted first degree murder after deliberation, two counts of aggravated robbery, first degree burglary, conspiracy to commit aggravated robbery,

conspiracy to commit first degree burglary, and second degree aggravated motor vehicle theft. The following brief description of the offenses and investigation is taken from the opinion of the Colorado Court of Appeals on direct appeal.

> The victim was a drug dealer. He and Jennifer Mack went to bed in the living room of his apartment one evening. They awoke in the middle of the night when two men forcibly entered the apartment and attempted to rob the victim. The victim retrieved a gun and shot one of the intruders before running out of the apartment. The remaining intruder followed him out before returning to the apartment and attempting to rouse the injured intruder. He then turned to Mack and asked where the victim kept his money and car keys. After Mack told him, the intruder retrieved the keys and shot Mack in the chest. He fled in the victim's car.
>
> The victim was found by police in a nearby alleyway. He had been shot three times and ultimately died at a hospital. The other intruder also died, and Mack survived.
>
> After an investigation sparked by a tip from a confidential informant, the People concluded that defendant was the second intruder, who followed the victim outside and shot him, shot Mack, and then drove away in the victim's car. Defendant was ultimately charged and convicted for his role in the robbery and shooting.

Docket No. 7-4 at 2-3. Mr. Mackey was sentenced to life in prison without the possibility of parole. On March 29, 2018, the Colorado Court of Appeals affirmed the judgment of conviction. *See* Docket No. 7-4. On September 10, 2018, the Colorado Supreme Court denied Mr. Mackey's petition for writ of certiorari on direct appeal. *See* Docket No. 7-3.

Mr. Mackey asserts three claims in the Application. Claim one is a Fourth Amendment claim in which he contends the trial court erroneously denied his motion to

suppress GPS data procured by an allegedly illegal search. Mr. Mackey contends in claim two that his state and federal constitutional rights to a fair trial were violated by admission of prejudicial evidence of other misconduct. Finally, he contends in claim three that his Sixth Amendment right to counsel was violated because he was effectively compelled to proceed *pro se* after the trial court denied his motion for substitution of counsel. The Court previously entered an Order, Docket No. 16, dismissing claim two. Additional facts pertinent to the remaining claims are set forth below.

## II. STANDARDS OF REVIEW

The Court must construe the Application and other papers filed by Mr. Mackey liberally because he is not represented by an attorney. *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). However, the Court should not be an advocate for a *pro se* litigant. *See* Hall, 935 F.2d at 1110.

Title 28 U.S.C. § 2254(d) provides that a writ of habeas corpus may not be issued with respect to any claim that was adjudicated on the merits in state court unless the state court adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). Mr. Mackey bears the burden of proof under § 2254(d). *See Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

The Court's inquiry is straightforward "when the last state court to decide a prisoner's federal claim explains its decision on the merits in a reasoned opinion." *Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018). "In that case, a federal habeas court simply reviews the specific reasons given by the state court and defers to those reasons if they are reasonable." *Id.* When the last state court decision on the merits "does not come accompanied with those reasons," . . . the federal court should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale [and] presume that the unexplained decision adopted the same reasoning." *Id.* The presumption may be rebutted "by showing that the unexplained affirmance relied or most likely did rely on different grounds than the lower state court's decision, such as alternative grounds for affirmance that were briefed or argued to the state supreme court or obvious in the record it reviewed." *Id.*

The threshold question the Court must answer under § 2254(d)(1) is whether Mr. Mackey seeks to apply a rule of law that was clearly established by the Supreme Court at the time his conviction became final. *See Williams v. Taylor*, 529 U.S. 362, 390 (2000). Clearly established federal law "refers to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." *Id.* at 412. Furthermore,

> clearly established law consists of Supreme Court holdings in cases where the facts are at least closely-related or similar to the case *sub judice*. Although the legal rule at issue need not have had its genesis in the closely-related or similar factual context, the Supreme Court must have expressly extended the legal rule to that context.

4

*House v. Hatch*, 527 F.3d 1010, 1016 (10th Cir. 2008). If there is no clearly established federal law, that is the end of the Court's inquiry pursuant to § 2254(d)(1). *See id*. at 1018.

If a clearly established rule of federal law is implicated, the Court must determine whether the state court's decision was contrary to or an unreasonable application of that clearly established rule of federal law. *See Williams*, 529 U.S. at 404-05.

> A state-court decision is contrary to clearly established federal law if: (a) "the state court applies a rule that contradicts the governing law set forth in Supreme Court cases"; or (b) "the state court confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at a result different from [that] precedent." *Maynard* [*v. Boone*], 468 F.3d [665,] 669 [(10th Cir. 2006)] (internal quotation marks and brackets omitted) (quoting *Williams*, 529 U.S. at 405, 120 S. Ct. 1495). "The word 'contrary' is commonly understood to mean 'diametrically different,' 'opposite in character or nature,' or 'mutually opposed.'" *Williams*, 529 U.S. at 405, 120 S. Ct. 1495 (citation omitted).
>
> A state court decision involves an unreasonable application of clearly established federal law when it identifies the correct governing legal rule from Supreme Court cases, but unreasonably applies it to the facts. *Id*. at 407-08, 120 S. Ct. 1495.

*House*, 527 F.3d at 1018.

The Court's inquiry pursuant to the "unreasonable application" clause is an objective inquiry. *See Williams*, 529 U.S. at 409-10. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather that application must also be unreasonable." *Id.* at 411. A

5

decision is objectively unreasonable "only if all fairminded jurists would agree that the state court got it wrong." *Stouffer v. Trammel*, 738 F.3d 1205, 1221 (10th Cir. 2013) (internal quotation marks omitted). Furthermore,

> [E]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations. [I]t is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by [the Supreme] Court.

*Harrington v. Richter*, 562 U.S. 86, 101 (2011) (internal quotation marks and citation omitted). In conducting this analysis, the Court "must determine what arguments or theories supported or . . . could have supported[] the state court's decision" and then "ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court." *Id.* at 102. In addition, "review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen*, 563 U.S. at 181.

Under this standard, "only the most serious misapplications of Supreme Court precedent will be a basis for relief under § 2254." *Maynard*, 468 F.3d at 671; *see also Richter*, 562 U.S. at 102 (stating "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable").

> As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for

fairminded disagreement.

*Richter*, 562 U.S. at 103.

Section 2254(d)(2) allows the Court to grant a writ of habeas corpus only if the relevant state court decision was based on an unreasonable determination of the facts in light of the evidence presented to the state court. Pursuant to § 2254(e)(1), the Court presumes the state court's factual determinations are correct and Mr. Mackey bears the burden of rebutting the presumption by clear and convincing evidence. The presumption of correctness applies to factual findings of the trial court as well as state appellate courts. *See Al-Yousif v. Trani*, 779 F.3d 1173, 1181 (10th Cir. 2015). The presumption of correctness also applies to implicit factual findings. *See Ellis v. Raemisch*, 872 F.3d 1064, 1071 n.2 (10th Cir. 2017). "The standard is demanding but not insatiable . . . [because] '[d]eference does not by definition preclude relief.'" *Miller-El v. Dretke*, 545 U.S. 231, 240 (2005) (quoting *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003)).

Finally, the Court's analysis is not complete even if Mr. Mackey demonstrates the state court decision is contrary to or an unreasonable application of clearly established federal law or was based on an unreasonable determination of the facts in light of the evidence presented. *See Harmon v. Sharp*, 936 F.3d 1044, 1056 (10th Cir. 2019). If the requisite showing under § 2254(d) is made, the Court must consider the merits of the constitutional claim *de novo*. *See id.* at 1056-57.

Similarly, if a claim was not adjudicated on the merits in state court, and if the claim also is not procedurally barred, the Court must review the claim *de novo* and the

7

deferential standards of § 2254(d) do not apply. *See id.* at 1057. However, even if a claim is not adjudicated on the merits in state court, the Court still must presume the state court's factual findings pertinent to the claim are correct under § 2254(e). *See id.*

III. **MERITS OF APPLICANT'S REMAINING CLAIMS**

    A. <u>**Claim One**</u>

Mr. Mackey contends in claim one that his Fourth Amendment rights were violated because the trial court erroneously denied his motion to suppress GPS data procured by an allegedly illegal search. The Colorado Court of Appeals recounted the facts pertinent to this claim as follows:

> At the time of the shooting, defendant was wearing a GPS monitor around his ankle. The ankle monitor was a condition of bond in an unrelated Denver case. After an informant notified the Aurora Police Department of defendant's potential involvement in the shooting, the Department contacted Denver County Pre-Trial Services and requested the monitor's tracking data from the night of the shooting. The data revealed defendant was at the victim's house when the victim was shot.
> 
> Before trial, defendant moved to suppress the GPS data, arguing that it was obtained in violation of the Fourth Amendment of the United States Constitution and article II, section 7 of the Colorado Constitution.
> 
> After a hearing, the trial court denied defendant's motion, reasoning that defendant did not have a reasonable expectation of privacy in the monitor's tracking data. The People ultimately introduced the data at trial.

Docket No. 7-4 at 3-4. Mr. Mackey does not dispute the accuracy of this factual description, which the Court presumes is correct. *See* 28 U.S.C. § 2254(e)(1).

The Colorado Court of Appeals also concluded Mr. Mackey did not have a reasonable expectation of privacy in the GPS data from his ankle monitor and affirmed the trial court's order denying the motion to suppress. Docket No. 7-4 at p.10. In support of this conclusion, the state court noted that Mr. Mackey agreed to wear the ankle monitor to maintain his freedom in the Denver case and was aware that the tracking information could be shared with other agencies. Docket No. 7-4 at 8-10.

Respondents argue that claim one must be dismissed pursuant to *Stone v. Powell*, 428 U.S. 465 (1976). Under *Stone*, "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." *Id.* at 494 (footnotes omitted); *see also Miranda v. Cooper*, 967 F.2d 392, 401 (10th Cir. 1992). A full and fair opportunity to litigate a Fourth Amendment claim in state court includes the procedural opportunity to litigate the claim as well as a full and fair evidentiary hearing. *See Miranda*, 967 F.2d at 401. A full and fair opportunity to litigate also "contemplates recognition and at least colorable application of the correct Fourth Amendment constitutional standards." *Gamble v. Oklahoma*, 583 F.2d 1161, 1165 (10th Cir. 1978). It is Mr. Mackey's burden to demonstrate he was denied a full and fair opportunity to litigate his Fourth Amendment claim in state court. *See Young v. Conway*, 715 F.3d 79, 92 (2d Cir. 2013) (Raggi, Circuit J., dissenting from denial of reh'g en banc); *Peoples v. Campbell*, 377 F.3d 1208, 1224 (11th Cir. 2004); *Sanna v. Dipaolo*, 265 F.3d 1, 8 (1st Cir. 2001); *Woolery v. Arave*, 8 F.3d 1325, 1328 (9th Cir.

9

1993); *Davis v. Blackburn*, 803 F.2d 1371, 1372 (5th Cir. 1986) (per curiam); *Doleman v. Muncy*, 579 F.2d 1258, 1266 (4th Cir. 1978).

Mr. Mackey fails to demonstrate he did not have a full and fair opportunity to litigate his Fourth Amendment claim in the state court proceedings. The record before the Court demonstrates Mr. Mackey had a procedural opportunity to litigate his Fourth Amendment claim in state court and that he took advantage of that opportunity. In particular, Mr. Mackey raised the Fourth Amendment claim in a motion to suppress, the trial court held a hearing on the motion to suppress, and Mr. Mackey raised the Fourth Amendment claim on appeal.

Mr. Mackey also fails to demonstrate that the state courts did not make colorable application of the correct Fourth Amendment standards. Once again, the record before the Court demonstrates the Colorado Court of Appeals thoughtfully considered and applied appropriate Supreme Court precedent to conclude the motion to suppress properly was denied. As noted above, the state court reasoned that the Fourth Amendment claim lacked merit because Mr. Mackey did not have a legitimate expectation of privacy in the GPS data collected by the ankle monitor he agreed to wear as a condition of his pretrial release in another case. This is consistent with Supreme Court precedent providing that "a person has no legitimate expectation of privacy in information he voluntarily turns over to third parties." *Smith v. Maryland*, 442 U.S. 735, 743-44 (1979).

To the extent Mr. Mackey contends his rights were violated because the state court failed to apply *Carpenter v. United States*, 138 S. Ct. 2206 (2018), the Court

notes that *Carpenter* was not clearly established federal law at the relevant time because the Supreme Court decided *Carpenter* after the Colorado Court of Appeals addressed Mr. Mackey's claim on the merits. It is true that *Carpenter* was decided while Mr. Mackey's petition for writ of certiorari to the Colorado Supreme Court on direct appeal was pending and that Mr. Mackey filed supplemental authority asking the Colorado Supreme Court to consider the decision in *Carpenter* after it was announced. However, in *Greene v. Fisher*, 565 U.S. 34, 35 (2011), the Supreme Court determined that clearly established federal law under § 2254(d)(1) does not include Supreme Court decisions "that are announced after the last adjudication of the merits in state court but before the defendant's conviction becomes final." Therefore, the fact that the Colorado Court of Appeals did not consider *Carpenter* does not demonstrate a failure to make colorable application of the correct Fourth Amendment standards. In any event, because *Carpenter* addressed cell-site location information from cell phones and not GPS data collected by means of an ankle monitor an individual agreed to wear as a condition of bond, *Carpenter* does not alter the correct Fourth Amendment standards actually applied by the Colorado Court of Appeals. *See House*, 527 F.3d at 1016 ("clearly established law consists of Supreme Court holdings in cases where the facts are at least closely-related or similar to the case *sub judice*.").

To the extent Mr. Mackey relies on the decision of the United States District Court for the Eastern District of New York in *United States v. Lambus*, 251 F. Supp.3d 470 (E.D.N.Y. 2017), the Court notes the district court's decision to suppress GPS data from a parolee's ankle monitor was reversed on appeal. More specifically, the United

11

States Court of Appeals for the Second Circuit concluded on appeal that "the GPS generated data should not have been suppressed" because the defendant, a parolee who consented to the use of a GPS tracking device attached to his ankle to avoid being sent back to prison, "had no reasonable or legitimate expectation of privacy that was violated by such monitoring." *United States v. Lambus*, 897 F.3d 368, 412 (2d Cir. 2018). Thus, the Eastern District of New York's decision is no longer good law and reliance on that decision is misplaced.

Because Mr. Mackey fails to demonstrate he was denied a full and fair opportunity to litigate his Fourth Amendment claim in state court, consideration of claim one is barred by *Stone*. *See Smallwood v. Gibson*, 191 F.3d 1257, 1265 (10th Cir. 1999) (*Stone* bar applied when the state courts "thoughtfully considered the facts underlying [the] Fourth Amendment claim and rejected the claim on its merits, applying the appropriate Supreme Court precedent"). Ultimately, Mr. Mackey's real argument with respect to claim one is a substantive disagreement with the resolution of that claim by the state courts. However, disagreement with a state court's resolution of a Fourth Amendment claim is not enough to overcome the bar in *Stone*. *See Matthews v. Workman*, 577 F.3d 1175, 1194 (10th Cir. 2009) (rejecting petitioner's argument that the state court misapplied Fourth Amendment doctrine in reaching wrong conclusions about probable cause because that was not the proper question under *Stone*); *see also Pickens v. Workman*, 373 F. App'x 847, 850 (10th Cir. 2010) (stating that "[t]he opportunity for full and fair litigation is not defeated merely because a participant might prefer a different outcome"). Thus, Mr. Mackey is not entitled to relief with respect to

claim one.

### B. Claim Three

Mr. Mackey contends in claim three that his Sixth Amendment right to counsel was violated because he was effectively compelled to proceed *pro se* after the trial court denied his motion for substitute counsel. According to Mr. Mackey, there was a complete breakdown in communication with his public defender, who failed to discuss the discovery and information regarding his case in order that Mr. Mackey could assist in his defense. Mr. Mackey further alleges that the trial court initially agreed to appoint substitute counsel, but subsequently forced him to choose between either proceeding with the public defender or proceeding *pro se* based on a determination that there was no ethical conflict.

The Colorado Court of Appeals described the facts relevant to this claim as follows:

> During a motions hearing, defendant expressed concern about his representation by the public defender's office. The court closed the hearing to hear argument from defendant and counsel. Defendant complained, specifically, that counsel had failed to (1) provide him with a copy of the charges; (2) provide him with a copy of the witness list; (3) act to prevent Denver Pre-Trial Services from turning over his GPS monitor data to police; and (4) pursue a "gag order" defendant had requested. Defendant also generally complained in various earlier hearings that counsel had failed to provide him with the entirety of discovery in his case.
>
> Counsel responded that he had informed defendant of the charges at a prior hearing, and that he had made the witness list available to defendant but did not give defendant a hard copy because he was concerned about defendant's

13

ability to maintain confidentiality in jail.   Further, as to the GPS data, counsel explained that he (1) believed Denver Pre-Trial Services had already turned over defendant's GPS data to police before counsel had become involved in the case; (2) had filed a motion to prevent further disclosure of the GPS data without a court order (which was denied); and (3) had notified the relevant entities that defendant did not consent to the further release of GPS data.   As to the gag order, counsel explained that (1) the case was suppressed on Courtlink and thus would not return results on a search for defendant's name; (2) he was unaware of any disclosures to the media by the prosecution or by police after charges were filed; and (3) media attention had died down and "that is . . . a hornet's nest I don't want to kick" by pursuing a gag order.

The court ultimately found that defendant had not established good cause for the substitution of counsel because there was not a complete breakdown in communication between defendant and counsel.   The court also informed defendant that he had the option of proceeding pro se if he desired.

Defendant later filed a pro se motion to waive his right to counsel and proceed pro se.   The court held a hearing on the motion.   At the hearing, defendant requested representation by alternate defense counsel and, if his request was not granted, that he be allowed to proceed pro se.   He expressed concern that his public defenders' caseload would prevent them from adequately preparing his case, and he made more specific allegations that he generally characterized as examples of a breakdown in communication.   After hearing statements from counsel in reply and engaging in a lengthy colloquy with defendant, the court ultimately allowed the public defender to withdraw from the case.

At a later hearing, the court granted defendant additional time to decide whether he wanted to proceed with the public defender or proceed pro se.   Ultimately, defendant elected to proceed pro se, and the court appointed advisory counsel.

Docket No. 7-4 at 13-15.

The Sixth Amendment to the United States Constitution provides that, "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." The right to counsel includes not only the right to retain counsel, but also the right of an indigent defendant to have counsel appointed for him at state expense. *Gideon v. Wainwright*, 372 U.S. 335 (1963). With respect to the issue of substitute counsel, a criminal defendant has a constitutional right to representation by counsel that is free from conflicts of interest. *See Cuyler v. Sullivan*, 446 U.S. 335, 348 (1980).

Mr. Mackey argued on direct appeal that the trial court erred in finding there was not a complete breakdown in communication and that, as a result, he was effectively compelled to proceed *pro se*. The Colorado Court of Appeals recognized that Mr. Mackey has a Sixth Amendment right to counsel and rejected his arguments for the following reasons:

> When a defendant objects to appointed counsel, the trial court has an obligation to inquire into the reasons for the dissatisfaction. *People v. Arguello*, 772 P.2d 87, 94 (Colo. 1989). The trial court is required to permit substitution of counsel if the defendant establishes "good cause, such as . . . a complete breakdown of communication . . . which leads to an apparently unjust verdict." *Id.* (quoting *McKee v. Harris*, 649 F.2d 927, 931 (2d Cir. 1981)). A breakdown in communications is "complete," thus requiring substitution of counsel, when it prevents the defendant's existing counsel from putting on an adequate defense. *Bergerud*, 223 P.3d at 694.
>
> Defendant's primary concern on appeal appears to be that counsel "failed to discuss the discovery and information

15

regarding the case with [defendant] so that he could assist in his defense . . . . [A]nd this failure to communicate was not merely a strategic difference."

However, criminal defendants are not accorded an unqualified right to personally review all discovery materials, and the failure of counsel to show defendant all discovery materials does not constitute good cause for substitution of counsel. See *People v. Krueger*, 2012 COA 80, ¶¶ 17-21. Moreover, mere communication difficulties – especially in the early stages of a case – are insufficient to establish a complete breakdown in communication. *See People v. Johnson*, 2016 COA 15, ¶ 32. Nor are allegedly infrequent visits from counsel. *Id.*

Defendant does not point to any evidence in the record to support the allegation that counsel wholly failed to discuss discovery with him. Similarly, defendant does not advance any argument or indicate any record support for the contention that perceived issues with communication resulted from anything other than strategic concerns. In fact, counsel asserted that any supposed failure to provide defendant with discovery materials was because defendant was incarcerated, and there was no guarantee of privacy or confidentiality.

We see nothing in the record to support the conclusion that the communication issues between defendant and counsel were substantial enough to undermine counsel's ability to adequately represent defendant. For the same reasons, we reject defendant's contention that he was "effectively compelled" to proceed pro se. We therefore affirm the trial court's denial of defendant's request for substitution of counsel.

Docket No. 7-4 at 16-18 (footnote omitted; brackets in original).

Mr. Mackey does not challenge the state court's recitation of the relevant facts describing his dissatisfaction with counsel and the issues that led to his request for substitution of counsel. The Court presumes those facts are correct and Mr. Mackey

fails to demonstrate the state court's determination regarding the absence of an actual conflict of interest with counsel is based on an unreasonable determination of the facts in light of the evidence presented under § 2254(d)(2). In any event, the Court's review of the state court record confirms that no actual conflict of interest existed and that Mr. Mackey merely disagreed with the manner in which appointed counsel was handling his case.

Because there was no actual conflict of interest, the state court's determination that Mr. Mackey's Sixth Amendment rights were not violated is not contrary to or an unreasonable application of clearly established Supreme Court law under § 2254(d)(1). The Supreme Court has recognized at least the possibility of a conflict of interest between a criminal defendant and his or her attorney in various circumstances. *See, e.g.*, *Mickens v. Taylor*, 535 U.S. 162, 164-65 (2002) (recognizing a "potential conflict of interest" when appointed counsel previously represented the murder victim in a separate case); *Wood v. Georgia*, 450 U.S. 261, 270-72 (1981) (suggesting strong "possibility of a conflict of interest" when defendants were represented by a lawyer hired by their employer); *Cuyler*, 446 U.S. at 348 ("Since a possible conflict inheres in almost every instance of multiple representation, a defendant who objects to multiple representation must have the opportunity to show that potential conflicts impermissibly imperil his right to a fair trial."). However, Mr. Mackey fails to identify any clearly established Supreme Court law that provides an indigent criminal defendant with a constitutional right to substitute counsel in the absence of an actual conflict of interest. *See Plumlee v. Masto*, 512 F.3d 1204, 1211 (9th Cir. 2008) ("Plumlee has cited no

17

Supreme Court case – and we are not aware of any – that stands for the proposition that the Sixth Amendment is violated when a defendant is represented by a lawyer free of actual conflicts of interest, but with whom the defendant refuses to cooperate because of dislike or distrust."). In fact, the Supreme Court has made it clear that the Sixth Amendment does not guarantee "a 'meaningful relationship' between an accused and his counsel." *Morris v. Slappy*, 461 U.S. 1, 14 (1983). Thus, a disagreement with counsel about trial strategy does not require substitution of counsel. *See United States v. Lott*, 310 F.3d 1231, 1249 (10th Cir. 2002).

Finally, to the extent Mr. Mackey also is challenging the voluntariness of his waiver of counsel in claim three by arguing he was "effectively compelled" to proceed *pro se*, he again fails to demonstrate he is entitled to relief. A defendant in a criminal proceeding has a constitutional right to waive his right to counsel and to represent himself. *Faretta v. California*, 422 U.S. 806, 817 (1975). A waiver may take the form of an express statement relinquishing the right to counsel or, under certain circumstances, a waiver can be implied from the facts of the case. *See North Carolina v. Butler*, 441 U.S. 369 (1979). In order to be effective, a waiver of counsel must be knowing, voluntary, and intelligent. *See Iowa v. Tovar*, 541 U.S. 77, 88 (2004).

Whether a waiver is knowing, voluntary, and intelligent "depends in each case upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused." *Edwards v. Arizona*, 451 U.S. 477, 482 (1981) (internal quotation marks omitted). In the context of a criminal proceeding that goes to trial, warnings regarding the pitfalls of proceeding without

counsel must be rigorously conveyed. *See Patterson v. Illinois*, 487 U.S. 285, 299 (1988). Mr. Mackey bears the burden of proving that he did not competently and intelligently waive his right to the assistance of counsel. *See Tovar*, 541 U.S. at 92.

The Colorado Court of Appeals summarily rejected Mr. Mackey's argument that he was "effectively compelled" to proceed *pro se*. Mr. Mackey does not cite any contradictory governing law set forth in Supreme Court cases or any materially indistinguishable Supreme Court decision that would compel a different result. *See House*, 527 F.3d at 1018. Therefore, he fails to demonstrate the state court's determination was contrary to clearly established federal law under § 2254(d)(1).

Mr. Mackey also fails to demonstrate that the state court's decision was based on an unreasonable determination of the facts in light of the evidence presented under § 2254(d)(2). Mr. Mackey does not dispute the factual determinations that he filed a motion asking to proceed *pro se*, the trial court held a hearing on the motion, he requested to proceed *pro se* if alternate defense counsel was not appointed, and the trial court granted him additional time at a later hearing to decide whether he wanted to proceed *pro se*. The transcripts of those hearings reveal that the court questioned Mr. Mackey extensively about his motion and desire to proceed *pro se*, thoroughly warned him about the potential pitfalls of proceeding without counsel, and determined his waiver was knowing, voluntary, and intelligent.

Finally, Mr. Mackey fails to demonstrate the state court's determination that he was not "effectively compelled" to represent himself was based on an unreasonable application of clearly established federal law under § 2254(d)(1). Based on the state

court's presumptively correct factual findings and the Court's own review of the state court record, it is clear that Mr. Mackey made a knowing, voluntary, and intelligent choice to represent himself at trial. As a result, Mr. Mackey fails to demonstrate the state court ruling "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Richter*, 562 U.S. at 103.

## IV. CONCLUSION

For the reasons discussed in this order, Mr. Mackey is not entitled to relief on his remaining claims. Accordingly, it is

**ORDERED** that the Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254, Docket No. 1, is denied and this case is dismissed with prejudice. It is further

**ORDERED** that there is no basis on which to issue a certificate of appealability pursuant to 28 U.S.C. § 2253(c).

DATED November 12, 2019.

BY THE COURT:

s/Philip A. Brimmer
PHILIP A. BRIMMER
Chief United States District Judge